JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ENTREPRENEUR MEDIA, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY J. ALFONSO, an individual; ORIGINAL BUSINESS MEDIA, LLC, a Missouri limited liability company; and DOES 1-10,<br><br>Defendants. | CASE NO. 8:21-cv-00644-DOC-(JDEx)<br><br>**ORDER AND JUDGMENT GRANTING APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ORIGINAL BUSINESS MEDIA, LLC. [24]**<br><br>Judge: Hon. David O. Carter<br>Date: July 19, 2021<br>Time: 8:30 a.m.<br>Location: Courtroom 9D |

Upon consideration of Plaintiff Entrepreneur Media, Inc.'s ("EMI") Application for Entry of Default Judgment against Defendant Original Business Media, LLC (the "Application") and all supporting documents and pleadings of record, and good cause appearing therein, the Court hereby **ORDERS** that the Application is **GRANTED**, and finds as follows:

I.   **DEFAULT JUDGMENT**

Federal Rule of Civil Procedure 55(b)(2) provides that a court may enter default judgment and, if necessary to effectuate judgment, conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. While the decision to grant or deny an application for default judgment is within the Court's discretion, "[i]n applying th[e] discretionary standard, default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999). Courts are guided by the following factors when determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim and the sufficiency of the complaint, (3) the sum of money at stake in the action, (4) the possibility of a dispute concerning material facts and whether the default was due to excusable neglect, and (5) the likelihood of obtaining a decision on the merits, which is favored. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). A plaintiff establishes trademark infringement or unfair competition by demonstrating that it has a protectable interest in the infringed mark, and the defendant's use of the mark is "likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011).

Here, the enumerated factors weigh heavily in favor of granting default judgment and awarding the requested relief. EMI has complied with the procedural requirements for default judgment, including securing the entry of default against Defendant Original Business Media, LLC ("Defendant"). As

discussed below, Defendant has infringed EMI's strong and distinctive marks and shows no signs of abating. Because all allegations, except for those pertaining to damages, are taken as true once the Court Clerk enters default, there is no possibility of a dispute concerning the material facts. See *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). Further, there is no evidence of excusable neglect in the record, in particular since EMI made Defendant aware of the action by properly serving court documents on Defendant. Finally, while cases should be decided on the merits whenever possible, Defendant's failure to defend this action has made a decision on the merits impractical, if not impossible. *Elektra Entm't Grp. Inc. v. Crawford,* 226 F.R.D. 388, 392 (C.D. Cal. 2005).

## II. EMI'S TRADEMARK RIGHTS

EMI owns the following valid U.S. trademark registrations (collectively, "EMI Marks"):

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16: Paper goods and printed matter; namely magazines, books, and published reports pertaining to business opportunities | 1,453,968 August 25, 1987 |
| ENTREPRENEUR | 35: Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers; and web advertising services, namely, providing active links to the websites of others | 2,263,883 July 27, 1999 |
| ENTREPRENEUR | 35: Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely, the start-up and operation of small business enterprises 41: Educational services, namely, conducting seminars on the development and operation of businesses, and conducting workshops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning, and insurance | 2,502,032 October 30, 2001 |

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 38: Streaming of video and digital material on the Internet | 4,260,948 December 18, 2012 |
| ENTREPRENEUR | 9: Downloadable computer software and software for mobile devices for the reproduction, display, and distribution of digitized content | 4,345,424 June 4, 2013 |
| ENTREPRENEUR | 9: Pre-recorded audio and audiovisual recordings of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, in the form of downloadable recordings<br>38: Streaming of audiovisual and multimedia content via the internet; transmission and delivery of audiovisual and multimedia content via the internet; video-on-demand transmission services; mobile media services in the nature of electronic transmission, wireless broadcasting and electronic delivery of audio, video and multimedia entertainment content, namely, text, data, images, audio, video, and audiovisual files provided via the internet; video broadcasting services over the internet or other communications network, namely, electronically transmitting video clips; internet broadcasting services; providing streaming of audio and video in the nature of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, namely, audio, visual, and audiovisual matter for others via global computer networks; broadcasting and transmission of analog television, digital television, cable television, satellite television, pay television, interactive television, radio, and internet programs; broadcasting of internet programs via radio and television; broadcasting of programs provided over the internet; streaming audio, video, and audiovisual content, data and information on the Internet, communications networks and wireless telecommunications networks; providing video on-demand transmission of audio, video and audiovisual content, data and information; transmission of audio, | 5,256,907 August 1, 2017 |

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | video and audiovisual content, data and information on the Internet, communications networks and wireless telecommunications networks. 41: Entertainment services, namely, the production, presentation, distribution and syndication of on-going television, internet and non-downloadable audio and audiovisual recordings, all of the aforementioned concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business | |
| ENTREPRENEUR | 25: Clothing, namely, shirts; fleece pullovers; pullovers; shirts; short-sleeved or long-sleeved t-shirts; short-sleeved shirts; T-shirts; Headgear, namely, hats, caps. | 4,690,619 February 24, 2015 |
| ENTREPRENEUR BOOKSTORE | 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to starting and operating a business and other topics concerning and of interest to entrepreneurs, new and existing businesses, and members of the general public | 4,612,937 September 30, 2014 |
| ENTREPRENEUR COACHING | 9: Downloadable audio and videos featuring professional coaching and mentoring services provided to groups and on a one-on-one basis in the field of business, namely, providing advice and information about how to start and successfully run a business; Downloadable software in the form of mobile applications for smart phones and tablets featuring professional coaching and mentoring services provided to groups and on a one-on-one basis in the field of business, namely, providing advice and information about how to start and successfully run a business 35. Providing advice and information about how to start and successfully run a business 41: Professional coaching and mentoring services provided to groups and on a one-on-one basis in the field of how to start and successfully run a business. | 5,023,413 August 16, 2016 |
| ENTREPRENEUR PRESS | 16: Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running, and operating a business, and individuals who succeeded in business, which subjects | 3,470,064 July 22, 2008 |

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | are of interest to entrepreneurs, new and existing businesses, and members of the general public | |
| Entrepreneur Press | 16: Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | 3,470,063 July 22, 2008 |
| ENTREPRENEUR'S STARTUPS | 9: Downloadable computer software and software for mobile devices for the reproduction, display, distribution, and sharing of digitized content; downloadable electronic publications, namely, magazines in the fields of business, finance, sales, marketing, current events, lifestyle issues, and developments in science and technology | 4,532,577 May 20, 2014 |
| ENTREPRENEUR'S STARTUPS | 16: Paper goods and printed matter; namely, magazines, books, booklets, and published reports pertaining to business opportunities | 3,204,899 February 6, 2007 |
| ENTREPRENEUR 360 | 16: Annual featured issue of magazine featuring the achievements of successful non-franchise and privately-owned businesses and publications related thereto, providing information and incentive to others to pursue excellence in business pursuits by presenting awards on an annual basis, and promoting award recipients and providing recognition by the way of awards to demonstrate excellence in the field of business. 35: Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information to customers in the field of starting and operating non-franchise and privately-owned businesses by means of a global computer network and other computer online service providers; advertising services, namely, providing advertising space in a magazine featuring news and information concerning the field of non-franchise and privately-owned businesses; providing statistics, ratings, and rankings and other information capable of being updated on a continuing basis through an interactive database and about businesses which are not franchises | 5,052,999 October 4, 2016 |

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | and are privately-owned. 41: Recognizing the achievements of successful non-franchise and privately-owned businesses and providing incentive to others to pursue excellence in business pursuits by presenting awards on an annual basis and promoting award recipients; providing recognition by the way of awards to demonstrate excellence in the field of business; arranging and conducting educational conferences; educational services, namely, developing, arranging, and conducting educational conferences and programs and providing courses of instruction in the field of business administration and management | |
| ENTREPRENEUR VOICES | 9: Downloadable digital books in the nature of e-books, namely, a downloadable series of non-fiction e-books featuring the unique voices of thought leaders, topic experts, small business owners and entrepreneurs, who share their definitive and unique perspectives on various hot and trending topics of interest to entrepreneurs, new and existing business owners and members of the general public, including inspirational stories and timeless advice 16: Paper goods and printed matter, namely, a series of non-fiction books featuring the unique voices of thought leaders, topic experts, small business owners and entrepreneurs, who share their definitive and unique perspectives on various hot and trending topics of interest to entrepreneurs, new and existing business owners and members of the general public, and inspirational stories and timeless advice | 5,854,545 September 10, 2019 |
| YOUNG ENTREPRENEUR | 38: Streaming of video and digital material on the Internet | 4,387,158 August 20, 2013 |
| ENTREPRENEUR AUTHORS | 41: Custom publishing services, namely, developing and editing content for others, and publishing that content in the form of print, digital and audio books and other literary works. | 6,127,326 August 18, 2020 |

Additionally, EMI's registration numbers 1,453,968; 2,263,883; 2,502,032; 4,260,948; 4,345,424; and 4,690,619 for the ENTREPRENEUR® mark are incontestable.

The federal registrations for the EMI Marks constitute prima facie evidence

that the marks are valid and owned by EMI. 15 U.S.C. § 1115(a). Moreover, the incontestable registrations for the EMI Marks noted above constitute "conclusive evidence" of the validity of those registered marks, EMI's ownership of those marks, and EMI's "exclusive right to use the mark[s] in commerce." 15 U.S.C. § 1115(b).

Further, other courts have already recognized the validity and strength of the EMI Marks, including the ENTREPRENEUR® Mark, and this Court concurs with those decisions. For example, the U.S. District Court for the Central District of California held that: (1) "[t]he extensive advertising and public recognition over the past 25 years have established [the ENTREPRENEUR® mark] as a strong mark in the industry;" (2) the ENTREPRENEUR® mark "is a strong distinctive mark, deserving of significant protection;" and (3) the ENTREPRENEUR® mark "has acquired secondary meaning." *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, at *9-10, 13 (C.D. Cal. June 23, 2004). The Ninth Circuit reviewed the District Court's findings and affirmed them on appeal. *Entrepreneur Media, Inc. v. Smith*, 101 Fed. Appx. 212 (9th Cir. 2004).

Similarly, the U.S. District Court for the District of Connecticut recognized that "the EMI Marks, and in particular the ENTREPRENEUR Mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known and recognized as identifying goods and services that originate from EMI, such that they are deserving of strong protection." *Entrepreneur Media, Inc. v. Whitehill et al.*, No. 13-cv-01819, Dkt. No. 19 (D. Conn. Aug. 19, 2015).

Both a Magistrate Judge and District Court judge in the Eastern District of Virginia found the ENTREPRENEUR® mark to be distinctive, and the U.S. District Court for the District of Maryland recognized the EMI Marks as valid, strong, and distinctive. *Entrepreneur Media, Inc. v. seattleentrepreneur.com*, Dkt. No. 11-00409, 2011 U.S. Dist. Lexis 139817, at *3-5 (E.D. Va. Dec. 6, 2011);

*Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC*, et al, 958 F. Supp. 2d 588, 594-596 (D. Md. 2013).

EMI has also developed extensive common law rights in the EMI Marks through consistent, widespread use of the marks throughout the United States. EMI and its predecessor companies have used the ENTREPRENEUR® mark for over forty years to publish magazines and books that provide editorial content and other information, as well as offer products and services related or of interest to businesses, business owners, and prospective business owners. EMI's ENTREPRENEUR® magazine has a paid circulation, including both subscriptions and single copy sales, of more than 513,000 in the United States and worldwide. *ENTREPRENEUR*® magazine routinely features articles about and interviews with some of the biggest names in the business and entertainment community. EMI has also published over 200 books (and multiple e-books) under the ENTREPRENEUR® and ENTREPRENEUR PRESS marks, and it has conducted numerous seminars, workshops, and other educational events, many of which are sponsored by household names, such as Cathay Pacific and Nissan, American Airlines, Canon USA, The Lincoln Motor Company, and AXA Financial.

EMI also owns and operates several websites, such as *entrepreneur.com* and *entrepreneurnetwork.com*, and various social media channels and mobile apps to promote its goods and services. The *entrepreneur.com* website has recently averaged more than fourteen million unique visitors and more than thirty-six million page views per month. EMI has also launched apps for iPhones, iPads, and Android. EMI offers a variety of podcasts, including a podcast offered through *entrepreneur.com,* and a podcast under the ENTREPRENEUR mark on iTunes, as well as other outlets. EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with the top names in sports, news, and business, such as General Motors, Canon USA, CNBC, Reuters, The NFL Players Association, Business Insider, Princeton Review, Great Place to

Work®, Palo Alto Software, and SeamlessDocs.

Therefore, EMI not only owns valid marks, but the EMI Marks, including the ENTREPRENEUR® mark, have acquired extensive goodwill, developed a high degree of distinctiveness, and become famous, well known, and recognized as identifying goods and services that originate from EMI such that they are deserving of strong protection.

### III. DEFENDANT'S INFRINGEMENT OF EMI'S TRADEMARK RIGHTS

Defendant uses the ENTREPRENEUR AFFILIATES MASTERY and ENTREPRENEUR AFFILIATES marks in commerce to offer, among other things, training and coaching services for affiliate marketing to consumers. Defendant markets its goods and services through its website at *entrepreneuraffiliatesmastery.com*, as well as through several social media accounts, including Facebook (*www.facebook.com/groups/1178345028933915*) and YouTube (*www.youtube.com/channel/UCMil4GDm_pmI4UQN4MHz3Lg/videos*) (collectively, the "Social Media Accounts").

Defendant's ENTREPRENEUR AFFILIATES MASTERY and ENTREPRENEUR AFFILIATES marks are likely to cause consumer confusion with the EMI Marks based on an examination of the relevant Sleekcraft factors, which are (1) the strength of EMI's marks; (2) the similarity of the marks; (3) the proximity of the parties' goods; (4) the identical marketing channels used; and (5) Defendant's intent in selecting its marks. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir. 1979); *see also Network Automation, Inc. v. Advanced Sys. Concepts,* 638 F.3d 1137, 1145 (9th Cir. 2011) (the Sleekcraft factors "are intended as an adaptable proxy for consumer confusion, not a rote checklist."); *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-3594, 2007 U.S. Dist. Lexis 100237, at *26 (N.D. Cal. Mar. 22, 2007) (granting default judgment where all but the last three Sleekcraft factors weigh in favor of a likelihood of confusion.);

*Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282 (C.D. Cal. 2001).

*First*, the EMI Marks, as discussed above, are strong and distinctive marks, especially the famous ENTREPRENEUR® mark.

*Second*, the ENTREPRENEUR AFFILIATES MASTERY and ENTREPRENEUR AFFILIATES marks are closely similar to the ENTREPRENEUR® mark, as they share the leading and dominant "entrepreneur" term. The descriptive and non-source identifying terms "affiliates" and "affiliates mastery" terms do little to distinguish the marks. See *La Quinta Worldwide LLC v. Q.R.T.M.*, S.A. de C.V., 762 F.3d 867, 876 (9th Cir. 2014); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992).

*Third*, EMI and Defendant offer identical goods and services, namely education services and programs, including online training and coaching courses, to the same class of consumers.

*Fourth*, EMI and Defendant offer these goods through the same or similar marketing channels, such as through their respective websites.

*Fifth*, as alleged in the Complaint (which is accepted as true), Defendant has intentionally, knowingly, deliberately, and willfully used its ENTREPRENEUR AFFILIATES MASTERY and ENTREPRENEUR AFFILIATES marks to violate EMI's trademark rights and trade off EMI's goodwill and reputation and has refused to cease this infringement.

Accordingly, the Court hereby **FINDS** that: (1) Defendant has infringed EMI's federally registered trademarks in violation of 15. U.S.C. § 1114; (2) Defendant has created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a); (3) Defendant has infringed EMI's trademarks in violation of California common law; and (4) Defendant has engaged in common law unfair competition.

## IV. JURISDICTION

Courts apply a three-prong test when analyzing specific jurisdiction: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

Defendant has purposefully directed its activities at California and availed itself of the privileges of conducting business in California. Defendant offers, advertises, markets, and promotes its goods and services through the ENTREPRENEUR AFFILIATES MASTERY and ENTREPRENEUR AFFILIATES marks by providing, among other things, training and coaching services for affiliate marketing to consumers in California. For example, California residents have posted on Defendant's social media accounts and have reviewed services that they purchased from Defendant. Therefore, Defendant has purposefully interacted with various California businesses and consumers and availed itself of the privileges of conducting business in California. *See Facebook, Inc. v. Banana Ads LLC*, No. 11-03619, 2013 U.S. Dist. Lexis 65834, at *4 (N.D. Cal. Apr. 30, 2013); see also *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Further, EMI's claims directly arise from Defendant's activities in the State of California, namely the advertising, targeting, offering, selling, and providing of goods and services under the unauthorized and confusingly similar ENTREPRENEUR AFFILIATES MASTERY and

1 ENTREPRENEUR AFFILIATES marks to, *inter alia*, California residents, all of
2 which directly harmed EMI, a California-based company.
3   Based on this initial showing, "the burden shifts to the defendant to 'set forth
4 a "compelling case" that the exercise of jurisdiction would not be reasonable.'"
5 See *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). Defendant has not
6 overcome this burden or presented any arguments or evidence as to why this Court
7 should not exercise its jurisdiction. Rather, the exercise of jurisdiction is
8 reasonable here as Defendant could likely foresee litigation in California given its
9 interactions with the State and businesses and consumers within the State.
10 *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011).
11   Accordingly, the Court hereby **FINDS** that it has specific jurisdiction over
12 Defendant and may properly enter a default judgment against Defendant.

13 **V. INJUNCTIVE RELIEF**

14   In consideration of the above and after weighing all appropriate equitable
15 factors applicable to this case, the Court finds that permanent injunctive relief is
16 appropriate because EMI has suffered irreparable injury that cannot be adequately
17 compensated by monetary damages. *craigslist v. RealWorks*, No. 08-5072, 2009
18 U.S. Dist. Lexis 132432, at *8-9 (N.D. Cal. Oct. 29, 2009). Indeed, Defendant's
19 lack of response to this lawsuit signals a threat of continued infringement that must
20 be ceased. *Philip Morris U.S.A., Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494,
21 502 (C.D. Cal. 2003). As Defendant is operating its business in direct violation of
22 the Lanham Act, the balance of hardships strongly tilts in EMI's favor, and the
23 public's interest in preventing consumer confusion would be best served by a
24 permanent injunction against such unlawful behavior.
25   Therefore, the Court hereby enters the following **PERMANENT**
26 **INJUNCTION:**
27   A. Defendant, and its principals, officers, directors, members, partners,
28 agents, servants, employees, and attorneys, and all other persons acting in concert

or participating with them (collectively, "Enjoined Parties"), who receive actual notice of the injunction order by personal or other service, are hereby **PERMANENTLY ENJOINED** and shall immediately:

    i. cease all use and never use the ENTREPRENEUR AFFILIATES MASTERY and/or ENTREPRENEUR AFFILIATES marks, the EMI Marks, or any other mark likely to cause confusion with the EMI Marks, including any misspelling or variation of those Marks, (a) in, on, or with any products or services, or (b) in connection with the advertising, marketing, or other promotion, distribution, offering for sale, or sale, of any products or services, including on the Social Media Accounts;

    ii. never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof to believe that any products or services produced, offered, promoted, marketed, advertised, provided, sold or otherwise distributed by the Enjoined Parties are in any manner associated or connected with EMI, or are licensed, approved, or authorized in any way by EMI;

    iii. never (a) represent or suggest in any fashion to any third party, or (b) perform any act that may give rise to the belief, that the Enjoined Parties, or any of their products or services, are related to, or authorized or sponsored by, EMI;

    iv. never register any domain name that contains any of the EMI Marks or any misspelling or variation of those Marks, or any domain name confusingly similar to any of the EMI Marks;

| | v. | transfer to EMI all domain names in the Enjoined Parties' possession, custody, or control that include the word "entrepreneur" or any misspelling or variation thereof, are otherwise confusingly similar to or contain any of the EMI Marks, or are or were used in connection with the Infringing Entrepreneur Marks, including but not limited to the *entrepreneuraffiliatesmastery.com* domain name; |
| | vi. | cease all use of the Social Media Accounts and any similar accounts or social media websites, and never register any social media account that contains the ENTREPRENEUR AFFILIATES MASTERY and/or ENTREPRENEUR AFFILIATES marks, any of the EMI Marks, or any misspelling or variation of those Marks; |
| | vii. | transfer to EMI, disable, or delete the Social Media Accounts used to promote the ENTREPRENEUR AFFILIATES MASTERY and/or ENTREPRENEUR AFFILIATES marks, including all such accounts in the Enjoined Parties' possession, custody, or control that include the word "entrepreneur" or any misspelling or variation thereof, or are otherwise confusingly similar to or contain any of the EMI Marks; |
| | viii. | never unfairly compete with EMI in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing any of the EMI Marks or any other mark likely to cause confusion with the EMI Marks, including any misspelling or variation of those Marks; and |

|   |   |   |
|---|---|---|
| 1 | ix. | never apply for or seek to register the ENTREPRENEUR |
| 2 |  | AFFILIATES MASTERY and/or ENTREPRENEUR |
| 3 |  | AFFILIATES marks, any of the EMI Marks, or any other mark |
| 4 |  | likely to cause confusion with the EMI Marks, including any |
| 5 |  | misspelling or variation of those Marks. |

B. The Enjoined Parties shall file with the Court and serve upon EMI's counsel, within thirty (30) days after service of this Order, a report in writing under oath setting forth in detail the manner and form in which the Enjoined Parties have complied with the Permanent Injunction.

D. To give practical effect to the Permanent Injunction, the social networking services or entities (e.g., Facebook and YouTube) related to any of the social media accounts subject to this Order shall, within fourteen (14) days of receipt of the Order, transfer, disable, or otherwise cancel those subject accounts at EMI's request if the Enjoined Parties have not already done so.

E. To give practical effect to the Permanent Injunction, the Registry or Registrar for any of the foregoing domain names shall, within fourteen (14) days of receipt of the Order, transfer or otherwise assign those subject domain names to EMI if the Enjoined Parties have not already done so.

## VI. COSTS AND ATTORNEYS' FEES

The Court hereby deems EMI to be the prevailing party in this action under 15 U.S.C. § 1117(a) and 54(d)(1) of the Federal Rules of Civil Procedure. Further, the Court deems this case to be exceptional under 15 U.S.C. § 1117(a) because of Defendant's intentional and willful misconduct, as well as its defiance and protraction of the judicial process by not responding or appearing in this matter. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002).

///

///

///

Accordingly, EMI is hereby provisionally awarded its costs and reasonable attorneys' fees, and is directed to submit a request for costs and attorneys' fees in accordance with the procedures and deadlines set forth in Federal Rule of Civil Procedure 54(d) and Local Rule 54.

No appearances are necessary on July 19, 2021. All pending hearing dates and deadlines are vacated by the Court.

**IT IS SO ORDERED.**

Dated: July 12, 2021

*/s/ David O. Carter*

The Honorable David O. Carter
United States District Judge